IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

JEFF W. TUCKER                                                                    PLAINTIFF

v.                                                                         No. 1:09CV35-M-D

SHERIFF JIM JOHNSON, ET AL.                                              DEFENDANTS

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* prisoner complaint of Jeff W. Tucker, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. Defendants Jim Johnson and Mitchell Bridges have moved [51] for summary judgment, arguing that the plaintiff's theory of recovery against them is based entirely upon *respondeat superior*. The plaintiff also seeks [66] summary judgment, arguing that the defendants failed to protect him from being attacked by other inmates – and for not stopping certain inmates from extorting money from the plaintiff. For the reasons set forth below, the motion [51] for summary judgment will be granted, and the plaintiff's motion [66] for summary judgment will be denied.

**Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert.*

*denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992). The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

## Factual Allegations

The plaintiff Jeff W. Tucker was arrested for violating the terms of his parole agreement by failing to register as a sex offender. He was held in the Lee County-Tupelo Adult Jail. While there, various inmates who were gang members told him that he had to pay protection or he would be beaten. When Tucker told one of the corrections officers about the threatened extortion, the officer just shook his head and closed the cell door. Given the lack of concern shown by the corrections officer, the plaintiff decided paying for protection would be prudent. He thus paid protection out of his canteen money for several months and had his brother send money orders to inmate Deryle Harrison for protection. During that time, Tucker was not attacked. Harrison was later moved to a restitution center in Greenwood, Mississippi, and Tucker's brother quit paying Harrison for protection. Shortly after that, another corrections officer placed inmate Willie Clark, who was not a protective custody inmate, in the cell with Tucker. Clark, who was in the top bunk, kicked Tucker repeatedly in the head and back until he agreed to pay Clark protection. Thirty minutes later, Clark was moved to another cell. Due to the apathy of the prison guards regarding protection of the inmates, Tucker was afraid to go to the doctor or tell anyone about his beatings or the payment of protection money. Tucker paid inmates Willie Clark and Kevin Mabry for "protection" every canteen day until he was transferred from the Lee County Jail. Tucker believed that, as a protective custody inmate, he should have been housed separate from the inmates not in protective custody.

On October 2, 2008, a canteen day, Corrections Officer Royce entered the pod, let all inmates out of their cells, and closed the doors to the cells. Several black inmates began systematically beating white inmates and taking their canteen money; then a line of black inmates (Willie Clark, Darius Riley, Ty Price, Ant Dixon, Kevin Mabry, Lagary Springer, and another

-3-

inmate) came downstairs and beat Tucker and the other white inmates playing cards at a table. An attacker hit Tucker so hard in the temple that he lost consciousness, and he could no longer fight back. The guards took three or four minutes to arrive on the scene, and they were laughing. The guards questioned several inmates about what happened, then said, "We know what happened; it's on tape."

The protective custody inmates were then placed on lockdown, and the attackers were not. In addition, Corrections Officer Royce gave the attackers an extra portion of food, as if to reward them for attacking Tucker and others. Tucker asked Royce to let someone know that he needed medical care, but he did not receive any medical care for the injuries sustained in the attack (except painkillers he purchased from the canteen). Tucker has lost three fingernails on his left hand – and has numbness on both sides of his body – and both problems appeared only after the attack. X-rays have revealed that Tucker has suffered fractured vertebrae in his neck, and an examination shows that he has suffered nerve damage, as well.

Tucker also claims that the defendants violated his right to the free exercise of his religion. Tucker alleges that he repeatedly requested permission to attend church services three times between March 10, 2008, through December 1, 2008 – once outside of his housing unit and twice when the services were held within his unit. Tucker does not state from which defendant he requested permission or whether he filed a grievance regarding this matter.

**Undisputed Material Facts**

In his deposition, Tucker admitted that Sheriff Johnson "had no knowledge of what was going on," and that he added Sheriff Johnson as a defendant to be certain that he could discover the names and addresses of the other defendants and witnesses. Tucker deposition, pp. 69-70. In addition, Tucker admitted that Sergeant Bridges was not present during the attack. *Id.* at 69.

Tucker's sole claim against Bridges is that he was present when Royce passed out extra food to the inmates who carried out the attack. *Id.* Tucker's theory of liability as to Sergeant Bridges on the failure to protect claim is contained in the following question and answer during Tucker's deposition:

> Q. What I want to make sure is, you're not maintaining that Bridges deliberately did anything to you? You're just saying that because he was the sergeant, he's responsible?
>
> A. That's basically it.

Tucker's deposition, p. 69. In addition, just before this question and answer, Tucker testified:

> He's – uh – I'm sure Royce probably acted alone on putting us in the zone and exposing us to this type of violence.

Tucker's deposition, p. 69.

### *Respondeat Superior* – Failure to Protect

A plaintiff seeking relief under §1983 cannot rely solely on the doctrine of *respondeat superior* to sustain his claim. *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). For a plaintiff to state a viable cause of action pursuant to § 1983, he must "identify defendants who are either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995) (citing *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)). In this case, the plaintiff does not allege that Sheriff Jim Johnson or Sergeant Bridges had any personal involvement or in any way caused the attack of October 2, 2008. Therefore, the plaintiff's allegation that these defendants failed to protect him from harm at the hands of other inmates will be dismissed for failure to state a constitutional claim.

### Denial of the Right to the Free Exercise of Religion

In addition, the plaintiff has not named any defendant who has prevented him from attending the religious services held in the jail library. Instead, he stated that he was permitted to attend only three church services over a period of months. In his cross-motion for summary judgment, Tucker argues that Sheriff Johnson should have ordered the construction of a cage in the library to keep the protective custody inmates separate from those in the general population during worship. A prison regulation that impinges on an inmate's constitutional rights is valid if it is reasonably related to legitimate penological interests. *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). The court must consider four factors in determining whether a given prison restriction is constitutional: (1) whether a valid and rational connection exists between the prison regulation and the legitimate government interest advanced to justify it; (2) whether there are alternative ways to exercise the right available to prison inmates; (3) the impact of the accommodation on prison guards, other inmates, and the allocation of prison resources generally; and (4) whether there are ready alternatives to the regulation. *Id.*, *see also Scott v. Miss. Dep't of Corr.,* 961 F.2d 77, 80-81 (5th Cir.1992) (a court need not "weigh evenly, or even consider, each of *Turner* factors" because rationality is the controlling standard).

In this case, Tucker *requested* placement into protective custody which, by its very nature, requires that the jail keep Tucker separate from other inmates. With the exceptions that Tucker describes in his complaint and amended complaint, the staff at the jail indeed kept him separate from other inmates, including during Sunday worship. As the worship services are held in the library, which is not arranged to keep various classifications of inmates separate, the plaintiff (who wished to be kept separate from other inmates) could not attend. Thus, a rational connection exists between the jail's decision to keep Tucker in his cell during worship and the

legitimate government interest in keeping him safe from harm.  In addition, building a cage to separate inmates in the jail library would certainly impact the allocation of jail resources, in both space and money – particularly given that the plaintiff was incarcerated in a jail, rather than a correctional institution.  These factors show a rational relationship between the decision not to send Tucker to worship services in the library and legitimate government interests.  As such, and because Tucker has not alleged that any defendant named in his complaint denied his request to attend religious services, this allegation will be dismissed for failure to state a constitutional claim.

### The Claim that Corrections Officer Royce and Mitchell Bridges Denied Tucker Adequate Medical Care After the Attack

Tucker alleges that he asked Corrections Officer Royce to take him to the infirmary after the attack, but Royce failed to act.  In addition, Tucker alleges that Sergeant Price (who is not a defendant) asked Officer Mitchell Bridges whether the inmates needed to go to medical for treatment, and Bridges said, "No."  Among the documents the plaintiff presented in response to the defendants' motion for summary judgment is a the jail's Policy Number 13.7, stating that inmates wishing to receive medical care must first submit a sick call request form.  The plaintiff has not alleged or provided proof that he was refused medical care after submitting such a form.  In addition, other inmates testified during their depositions that no one in the encounter was hurt seriously enough to warrant medical care.  Further, the plaintiff alleged that, in an earlier incident, an inmate in a top bunk repeatedly kicked him in the head and back until the plaintiff agreed to pay protection, and that the plaintiff did not report this attack for fear of reprisals.  The injuries about which the plaintiff complains could have arisen out of that attack, as well.  For these reasons, the plaintiff's allegation regarding denial of medical care will be dismissed with prejudice.

### Tucker's Claim that Corrections Officer Royce Failed to Protect Him From the Attack of Other Inmates

Tucker's allegations, taken as true, state a claim against Officer Royce (and the officer who permitted another inmate to enter Tucker's cell and beat him) for failure to protect Tucker against attack at the hands of other inmates. As such, this claim will proceed.

In sum, the defendants' motion for summary judgment will be granted. All of the plaintiff's claims against Jim Johnson and Mitchell Bridges will be dismissed for failure to state a claim upon which relief could be granted. The plaintiff's claim that he was prohibited from attending worship services on Sunday will also be dismissed for failure to state a constitutional claim. Finally, Tucker's claim against Officer Royce (and the officer who permitted another inmate to enter Tucker's cell and beat him) for failure to protect him from attack will proceed. A judgment consistent with this memorandum opinion shall issue today.

**SO ORDERED,** this the 15th day of July, 2010.

/s/ MICHAEL P. MILLS
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**