# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

| | |
|---|---|
| JEFF W. TUCKER | PLAINTIFF |
| v. | No. 1:09CV35-MPM-JAD |
| JOSEPH ROYCE, et al. | DEFENDANTS |

**LEAD CASE**

**CONSOLIDATED WITH**

| | |
|---|---|
| WILLIAM P. TURNER | PLAINTIFF |
| v. | No. 1:09CV106-MPM-JAD |
| JIM H. JOHNSON, et al. | DEFENDANTS |

**AND WITH**

| | |
|---|---|
| CHRIS COSNER | PLAINTIFF |
| v. | No. 1:10CV04-MPM-JAD |
| LEE COUNTY SHERIFF'S DEPARTMENT, et al. | DEFENDANTS |

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* prisoner complaints of William P. Turner and Chris Cosner, who challenge the conditions of their confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that each plaintiff was incarcerated when he filed this suit. The defendants have moved for summary judgment. Plaintiff Cosner has responded to the motion, but plaintiff Turner has not. The deadline for response has, however, expired, and the matter is ripe for resolution. For the reasons set forth below, the motions of the defendants for summary judgment will be granted in part, Chris Cosner

will be dismissed from this suit, and judgment will be entered in favor of all defendants except Joseph Royce. The claims of Jeff W. Tucker and William P. Turner against Joseph Royce for failure to protect will proceed.

## Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992). The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

**Facts Pertaining Both to Cosner and Turner**

Plaintiffs Cosner and Turner were incarcerated at the Lee County Jail at all times relevant to the incidents described in their respective complaints. Plaintiff Turner had been placed in protective custody status because he had been convicted for sexual battery of a minor – and other inmates often target sex offenders for mental and physical abuse. Cosner was segregated because he, too, is a sex offender.

On October 2, 2008, a canteen day, Corrections Officer Joseph Royce entered the pod, let all inmates (sex offenders and lockdown inmates) out of their cells, and closed the doors to the cells. An altercation then broke out between the two groups of inmates. The guards responded, quelled the disturbance, and questioned several inmates about what happened. The protective custody inmates were then segregated, and the attackers were not. In addition, Royce gave the attackers an extra portion of food.

Neither plaintiff was permitted to attend church services on a regular basis. The services were held in the jail library, which is not set up such that inmates may be segregated. The

plaintiffs were not permitted to watch television and had limited access to the small outdoor recreation area at the Lee County Jail, although they did have access to a day room, which is a larger space than the outdoor recreation area.

## Facts Pertaining Only to Chris Cosner

Cosner separately claims that the defendants denied him medical treatment for injuries allegedly sustained during the fracas of October 2, 2008.

## The Plaintiffs' Claims

Cosner and Turner both claim that the defendants: (1) failed to protect them from the attack of other inmates; (2) denied the plaintiffs' right to the free exercise of religion by prohibiting them from attending Sunday church services in the jail library; and (3) provided inadequate conditions of confinement by failing to ensure that the plaintiffs received a reasonable amount of outdoor recreation and access to a television. Cosner makes separate claims that the defendants failed to provide him with adequate medical care – and improperly placed him in protective custody. In his response to the defendants' motion for summary judgment, Cosner claims – for the first time – that conditions in the Lee County Jail were unconstitutionally harsh because his cell was too cold, overcrowded, had inadequate bedding for comfortable sleep, and failed to adopt a policy to segregate dangerous inmates from those of a more peaceful nature.

## Discussion

As an initial matter, the court notes that, although Turner has named Ronnie Partlow as a defendant, he has not alleged any claims against him. As such, defendant Partlow will be dismissed with prejudice from this case. In addition, defendant Sean Cheek, who was named as a defendant by plaintiff Jeff W. Tucker, could not be located, and Tucker could not provide a valid address for service of process upon this defendant. As such, defendant Sean Cheek will be

dismissed from this case, as well.

The court will first discuss the claims alleged by both plaintiffs, then the separate allegations of Cosner.

## Failure to protect

Both plaintiffs claim that the defendants failed to protect them from the attack of the lockdown inmates. "The Eighth Amendment affords prisoners protection against injury at the hands of other inmates" *Johnson v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986) (citations omitted). "The 'deliberate indifference' standard [is] the proper standard to apply in the context of convicted prisoners who claim[] denial of medical care or the failure to protect." *Grabowski v. Jackson County Public Defenders Office*, 47 F.3d 1386, 1396 (5th Cir. 1995). The deliberate indifference standard is not met "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994).

As discussed below, the plaintiffs alleged facts that would support a claim only against Corrections Officer Joseph Royce. Cosner, however, has not named Royce as a defendant, and the deadline for adding parties has expired. As such, Cosner has waived all claims against Royce.

## Claims Against Sheriff Johnson for Failure to Protect

As to Sheriff Johnson in his individual capacity, he was not present when the altercation occurred. As such, he had no personal involvement – and no knowledge of the attack when it happened. As such, Turner's allegation against him for failure to protect must therefore be dismissed under *Farmer, supra*, for failure to state a constitutional claim. In addition, in a

prisoner case filed under 42 U.S.C. § 1983, Sheriff Johnson cannot be held liable based only upon his position as a supervisor of prison employees. Section 1983 liability cannot be predicated upon a *respondeat superior* theory. *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). For a plaintiff to state a viable cause of action pursuant to § 1983, he must "identify defendants who are either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995) (citing *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)). Sheriff Johnson was not personally involved in the altercation; as such, Turner's claims against him must be dismissed for that reason, as well.

In his official capacity, the Sheriff represents Lee County, Mississippi. A government entity has no liability for constitutional violations committed by a county employee unless those violations arose directly from a government custom or policy. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Conner v. Travis County*, 209 F.3d 794, 796 (5th Cir. 2000). An official policy for § 1983 purposes is a policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority. An official policy can also be a persistent, widespread practice of city officials or employees, which, though not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom fairly representing municipal policy. *Brown v. Bryan County*, 219 F.3d 450, 456 (5th Cir. 2000). Turner has simply not met this standard, as he has neither alleged nor proved that the Lee County Jail adopted a policy or custom that led to the altercation of October 2, 2008. For these reasons, the plaintiffs' claims against Sheriff Johnson in his official or individual capacity will be dismissed for failure to state a constitutional claim.

### Claims Against Mitchell Bridges for Failure to Protect

Plaintiffs Turner and Cosner have named Sergeant Mitchell Bridges as a defendant. Turner alleges only that Bridges failed to respond to a grievance. During his deposition, however, Turner testified that he never made any complaint about being injured. Turner depo., p. 24. Indeed, even if Bridges had failed to respond to a grievance, he cannot be held liable for his inaction under 42 U.S.C. § 1983. *Geiger v. Jowers*, 404 F.3d 371 (5th Cir.2005). Cosner makes the bare allegation that defendant Mitchell Bridges knew of the impending attack, but Cosner has not provided proof – other than speculation and hearsay – that Bridges had any involvement in the attack. Cosner alleges only that Bridges must have known of the impending attack because he was shift leader (Cosner depo., p. 28) – and because he attributes an anonymous note passed around by other inmates to Bridges (*Id.*) Cosner had not come forward with admissible evidence to support his allegation; as such, his claims against defendant Mitchell Bridges must fail.

### Claims Against Joseph Royce for Failure to Protect

Turner has stated a claim against Royce for failure to protect him from the attack of other inmates. Royce admits that he permitted the lockdown inmates to mix with the protective custody sex offender inmates. Royce states that he did this mistakenly, but Turner alleges that Royce did so intentionally. This is a disputed issue of material fact and, as such, Turner's claim for failure to protect against Joseph Royce will proceed to trial.

### Denial of the Right to Free Exercise of Religion

Both Cosner and Turner allege that defendants Joseph Royce and Sheriff Johnson would not permit them to attend Sunday church services in the jail library because the plaintiffs were protective custody inmates, and the library is not equipped for separating inmates into groups. Both Royce (through his deposition) and Johnson (via his affidavit) stated that the Lee County

Sheriff's Department attempts to get protective custody inmates to Sunday church services if the inmates request to do so ahead of time. Sheriff Johnson, however, emphasized that the very purpose of protective custody is to keep the vulnerable inmates separate from those who might harm them. As such, protective custody inmates are kept separate from other inmates – sometimes even during worship services.

A prison regulation that infringes on an inmate's Constitutional rights is valid if it is reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Four factors determine whether a given prison restriction is Constitutional: (1) whether a valid and rational connection exists between the prison regulation and the legitimate government interest advanced to justify it; (2) whether there are alternative ways to exercise the right available to prison inmates; (3) the impact of the accommodation on prison guards, other inmates, and the allocation of prison resources generally; and (4) whether there are ready alternatives to the regulation. *Id., see also Scott v. Miss. Dep't of Corr.,* 961 F.2d 77, 80-81 (5th Cir.1992) (a court need not "weigh evenly, or even consider, each of *Turner* factors" because rationality is the controlling standard).

As discussed above, the plaintiffs were in protective custody because they are sex offenders and thus likely to be attacked by other inmates. Protective custody serves to separate the plaintiffs from their potential attackers. The first factor thus weighs in favor of upholding the restriction, as separating the inmates in the manner described is both valid and rational. The second factor is neutral. Although Cosner offers several potential alternatives to the present church arrangement at the jail (e.g., recording the service for later presentation to the protective custody inmates, or having a separate service altogether), it is not clear whether the jail could readily implement them. The third factor also weighs in favor of upholding the jail's practice, as

any alternative to the present policy would require either setting up and taking down video or audio equipment (if either is even available) – or holding a separate service entirely. Both involve some amount of manpower and movement of the plaintiffs and other prisoners. The fourth factor also weighs in favor of the jail's practice, as the court can discern no ready alternative, given the need to keep sex offenders separated from other prisoners.

Having reviewed the four factors, the court finds that they weigh in favor of upholding the practice of segregating sex offenders from other inmates – even during church services. This supports the legitimate penological interests of safety of the plaintiffs and others, general security, and orderly administration of the jail. For these reasons, the plaintiffs' claim regarding denial of their right to the free exercise of their religion will be dismissed.

### General Conditions of Confinement:
### Lack of Outdoor Recreation and Access to Television

Both Turner and Cosner allege that the defendants violated the Eighth Amendment prohibition against cruel and unusual punishment by failing to provide them with opportunities for outdoor recreation – and denying them access to television. Protective custody inmates at the Lee County Jail do, however, enjoy three hours per day outside their cells – and have access to the day room of their pod – a room with more area to move around than the outside recreation area. Indeed, the plaintiffs in this case were in the day room playing cards when the altercation occurred.

"[T]he Eighth Amendment may afford protection against conditions of confinement which constitute health threats but not against those which cause mere discomfort or inconvenience." *Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir.1989), *cert. denied*, 493 U.S. 969 (1989)(citation omitted). "Inmates cannot expect the amenities, conveniences, and services of a

good hotel." *Id.* at 849 n.5 (citation omitted). It is clear that prison officials have certain duties under the Eighth Amendment, but these duties are only to provide prisoners with "humane conditions of confinement," including "adequate food, clothing, shelter, and medical care . . . ." *Woods v. Edwards*, 51 F.3d 577, 581 n.10 (5th Cir. 1995) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Given the "totality of the circumstances," *McCord v. Maggio*, 910 F.2d 1248 (5th Cir. 1990), these claims do not rise to the level of a constitutional violation. The plaintiffs have not identified any "basic human need" they were denied for an unreasonable period of time. *See Woods*, 51 F.3d at 581.

Regarding opportunity for outdoor exercise, a court must consider the size of an inmate's cell, the time he spends locked in his cell per day, and the overall duration of his confinement. *Ruiz v. Estelle*, 679 F.2d 1115 (5th Cir. 1982). In this case, the prisoners at the Lee County Jail enjoy three hours per day outside their cells (where they are free to exercise in the day room) and are incarcerated at the jail only long enough to transfer into the custody of the Mississippi Department of Corrections. This set of facts does not support an Eighth Amendment claim for lack of opportunity to exercise; as such, this claim will be dismissed as to both plaintiffs. Finally, there is simply no right under the Constitution for a prisoner to have access to a television. The plaintiffs could meet every day to converse with each other, visit, and play cards. Given this level of interaction, the plaintiffs' claim regarding lack of a television does not rise to the level of a constitutional violation. Thus, all of the plaintiffs' claims regarding the general conditions of their confinement will be dismissed.

**Custody Classification – Placing Cosner in Protective Custody,
Restricting His Movement Throughout the Jail,
and Restraining Him During Such Movements**

Cosner argues that the defendants' decision to place him in protective custody, restrict his movement within the jail, and placing him in restraints for such movement constituted a violation of the Eighth Amendment prohibition against cruel and unusual punishment. Inmates have neither a property nor liberty interest to any particular housing assignment or custodial classification, either under the United States Constitution or under Mississippi law. *Hewitt v. Helms*, 450 U.S. 460, 468 (1983); *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995); Wilson v. Budney, 976 F.2d 957, 958 (5th Cir. 1992); *McCord v. Maggio*, 910 F.2d 1248, 1250 (5th Cir. 1990) (citations omitted); MISS. CODE ANN. §§ 47-5-99 to -103 (1993). Prisoner classification is a matter squarely within the "broad discretion" of prison officials, "free from judicial intervention" except in extreme circumstances. *McCord*, 910 F.2d at 1250 (citations omitted).

Cosner was placed in protective custody for a reason: as a sex offender, he was vulnerable to assault from other inmates. According to Cosner's own complaint (which the court does not take as established fact), when he and other sex offenders were put together with other inmates, Cosner and others were indeed attacked because they were sex offenders. Thus, when it was properly administered, the policy Cosner complains of protected him – as it was intended. Deviation from the policy led to the attack. Cosner's complaints about being restricted to certain areas of the jail – and the use of restraints to move him – are just the type of security measures within the "broad discretion" of prison officials, "free from judicial intervention" except in extreme circumstances. *McCord*, 910 F.2d at 1250. Neither practice violates the Constitution, and the court should not – and will not – interfere in the minutiae of prison administration.

**Cosner's Claim of Denial of Medical Care**

Cosner alleges that he did not receive medical care for injuries (cuts on his face and two chipped teeth) received during the altercation of October 2, 2008. He claims that Joseph Royce directed Corporal Price to take Cosner to the nurse, but Price did not do so. Cosner alleges that in the evening he told someone he wanted to speak with Royce, but Royce refused to speak to him. Then the plaintiff asked Officer Jason Edwards to bring him a medical request form, but Edwards never did.

In order to prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must allege facts which demonstrate "deliberate indifference to the serious medical needs of prisoners [which] constitutes 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment . . . whether the indifference is manifested by prison doctors or prison guards in intentionally denying or delaying access to medical care . . . ." *Estelle v. Gamble*, 429 U.S. 97, 104-105, 50 L. Ed. 2d 251, 260 (1976); *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Under this standard, a state actor may not be held liable under 42 U.S.C. § 1983 unless plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 838. Only in exceptional circumstances may knowledge of substantial risk of serious harm be inferred by a court from the obviousness of the substantial risk. *Id*. Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986). This same subjective

deliberate indifference standard has been applied to pre-trial detainees under the Fourteenth Amendment as well as convicted inmates under the Eighth Amendment. *See Hare v. City of Corinth*, 74 F.3d 633, 648 (5th Cir. 1996). A prisoner's mere disagreement with medical treatment provided by prison officials does not state a claim against the prison for violation of the Eighth Amendment by deliberate indifference to his serious medical needs. *Gibbs v. Grimmette*, 254 F.3d 545 (5th Cir.2001), *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

In this case Cosner has alleged that Corporal Price and Officer Jason Edwards at various times refused to take him to see the jail nurse; however, Cosner has not named either one as a defendant. In addition, the sole allegation against Royce (that he refused to speak to the plaintiff when a third party asked him to) simply does not rise to the level of a constitutional violation. Indeed, Cosner admits that Royce initially ordered Price to take him to medical. It was Price (who is not a party) who failed to follow through. Likewise, when Cosner asked to speak with Joseph Royce, Royce simply declined to talk to him. He did not refuse to seek medical care for Cosner. These allegations do not rise to the level of a constitutional violation and will be dismissed with prejudice. In any event, as discussed above, Chris Cosner has not listed Joseph Royce as a defendant in this case. As such, any potential claims Cosner may have had against Royce have been waived.

## Summary

There have been three motions for summary judgment filed by the defendants in this case. In a previous opinion and judgment, the court ruled on the summary judgment motion filed as to plaintiff Jeff W. Tucker, holding that only Tucker's claim against Joseph Royce for failure to protect would proceed to trial. In the present opinion and judgment, the court holds that the defendants' motion for summary judgment will be granted in its entirety as to Chris Cosner. All

of Cosner's claims will be dismissed with prejudice.  The defendants' summary judgment motion will also be granted as to all but one of plaintiff William P. Turner's claims.  Turner's claim against Joseph Royce for failure to protect will also proceed to trial.  The claims of Jeff W. Tucker and William P. Turner against Joseph Royce for failure to protect them from attack will proceed to trial.  Plaintiff Chris Cosner will be dismissed from this suit.  All other claims and defendants will be dismissed.  A judgment consistent with this memorandum opinion shall issue today.

**SO ORDERED,** this the 8th day of February, 2011.

        **/s/ MICHAEL P. MILLS**
        **CHIEF JUDGE**
        **UNITED STATES DISTRICT COURT**
        **NORTHERN DISTRICT OF MISSISSIPPI**